In re the Termination of Parental Rights to
Max G. W., a Person Under the Age of 18:

Kenosha County Department of Human Services,
Petitioner-Respondent,

v.

Jodie W., Respondent-Appellant-Petitioner.

Supreme Court

*No. 2005AP2–NM. Oral argument March 21, 2006.
—Decided July 11, 2006.*

2006 WI 93

(Also reported in 716 N.W.2d 845.)

534

For the respondent-appellant-petitioner there were briefs by *Joseph W. Voiland, Lewis W. Beilin, Rebecca E. Frihart,* and *Reinhart Boerner Van Deuren S.C.,* Milwaukee, and oral argument by *Joseph W. Voiland.*

For the petitioner-respondent there was a brief and oral argument by *Mary M. Hart,* assistant district attorney.

An amicus curiae brief was filed by *Cynthia A. Lepkowski* on behalf of the Legal Aid Society of Milwaukee, Inc.

An amicus curiae brief was filed by *John C. Talis,* assistant corporation counsel, on behalf of the Dane County Department of Human Services.

¶ 1. LOUIS B. BUTLER, JR., J. Jodie W. (Jodie) seeks review of an unpublished decision of the court of appeals, which affirmed an order of the circuit court, the Honorable Mary K. Wagner, Kenosha County, terminating Jodie's parental rights over Max W. (Max). *Kenosha County DHS v. Jodie W.*, No. 2005AP2–NM, unpublished order (Wis. Ct. App. March 30, 2005).

¶ 2. The circuit court concluded that it was in Max's best interest to terminate Jodie's parental rights. The court determined that Max had been adjudged to be a child in continuing need of protection or services and had been outside the home for at least six months, that Jodie failed to meet the court-ordered conditions of return, that the department made reasonable efforts to assist Jodie in meeting those conditions, and that it was not likely that Jodie would meet the conditions of return within 12 months of the hearing. Upon finding that grounds had been established, the circuit court made a finding of parental unfitness and terminated Jodie's parental rights over Max.

¶ 3. We conclude that the record does not clearly and affirmatively demonstrate that Jodie's no contest plea was voluntarily, knowingly, and intelligently entered, and that therefore Jodie did not waive her challenge to the constitutionality of Wis. Stat. § 48.415(2)(a) (2003–04).[1] We also conclude that the circuit court's finding of parental unfitness was based on an impossible condition of return, without consideration of any other relevant facts and circumstances particular to the parent, and is therefore contrary to a constitutionally permissible interpretation of Wis. Stat. § 48.415(2)(a). Accordingly, we reverse the court of appeals.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## I

¶ 4. Jodie is the natural birth mother of Max W., who was born on July 10, 2000. Jodie was the sole caregiver for Max for the first two years of his life.[2] Jodie was subsequently incarcerated in July 2002, based on convictions for operating while intoxicated, fourth offense, and for fleeing an officer.[3] She arranged for her mother to care for Max while she was incarcerated. However, shortly after Jodie was sentenced, her mother contacted social services and informed them that she could no longer care for Max. The record contains no evidence of previous involvement by social services.

¶ 5. Kenosha County filed a petition for protection or services on September 11, 2002, and on November 25, 2002, Max was found to be a child in need of protection or services (CHIPS), pursuant to Wis. Stat. § 48.415(2). Max was placed with a foster family on November 25, 2002. Max continues to reside with this same foster family.

¶ 6. The circuit court entered a dispositional order on December 17, 2002. In its order, the court included a written and oral explanation of conditions that Jodie would be required to meet in order for Max to be returned to her home. The court also included warnings to Jodie regarding the grounds for termination of her parental rights (TPR) made applicable through the CHIPS order, pursuant to Wis. Stat. § 48.356.

¶ 7. The conditions required Jodie to (1) obtain, maintain and manage a suitable residence;[4] (2) cooper-

[2] Max's father never assumed any responsibility for him.

[3] Jodie was released from prison on March 6, 2006.

[4] The form "Conditions for Safe Return" includes the following within the requirement that the parent maintain a suitable residence: (1) that the parent have sufficient food, clothing, bedding, and furniture to meet the needs of the child;

ate with the Division of Children and Family Services;[5] (3) maintain regular contact with Max,[6] (4) actively participate in services;[7] (5) provide for the financial

(2) that the home have adequate heating, plumbing, and electricity; (3) that the home is adequately clean; and (4) that the parent demonstrate the ability to manage a household competently and independently in the areas of bill paying, budgeting, shopping, food preparation, and maintaining the home.

[5] The form "Conditions for Safe Return" includes the following for the requirement that the parent cooperate with the Division of Children and Family Services: (1) that the parent cooperate with the Division and service providers by informing them of any change in address, telephone number, employment, and material status within five days of such changes; (2) that the parent participate in case planning to meet the court-ordered conditions of return; (3) that the parent give the Department access to living quarters, notification of changes of household members, meeting with the social worker and service providers on a regular and as requested basis; (4) that the parent actively participate in the Division and Court permanency plan review process; (5) that the parent sign all releases and authorizations concerning educational, medical and therapeutic services for the child; (6) that the parent sign all releases of information concerning court ordered services; and (7) that the parent not interfere with the placement of the child.

[6] The form "Conditions for Safe Return" includes the following for the requirement that the parent maintain regular contact with the child(ren): (1) that the parent demonstrates appropriate parenting skills as learned through parenting classes and programs; and (2) that the parent, if incarcerated, provides regular correspondence to the Division for the child.

[7] The form "Conditions for Safe Return" includes the following for the requirement that the parent actively participates in services: (1) that the parent successfully completes age appropriate parenting program and the ability to demonstrate an understanding of principles taught; (2) that the parent participates in counseling; (3) that the parent submits to random urine analysis as established by the Division or its designee, verifies all prescribed medications with the Division worker, and

needs of Max;[8] (6) participate in a counseling program specifically designed to address issues of domestic violence; and (7) successfully complete any conditions of probation.

¶ 8. On April 22, 2004, the Kenosha County Department of Human Services (Department) filed a petition to terminate Jodie's parental rights, pursuant to Wis. Stat. § 48.415(2). Kenosha County asserted that (1) the Department made a reasonable effort to provide the services ordered by the court; (2) Jodie failed to meet the conditions for the safe return of Max to her home, specifically noting that Jodie remained incarcerated and therefore had not obtained a suitable residence; and (3) there was a substantial likelihood that Jodie would not meet these court-ordered conditions for safe return within the next 12 months, specifically noting that Jodie remained incarcerated.

¶ 9. At Jodie's initial appearance, held on June 7, 2004,[9] Jodie denied the allegations of grounds for

refrains from all alcohol and drug use; (4) that the parent completes an AODA assessment and treatment and successfully complies with recommendations made; and (5) that the parent provides verification to the Division of successful completion of services.

[8] The form "Conditions for Safe Return" includes the following for the requirement that the parent provides for the financial needs of the child(ren): (1) that the parent cooperates with the Fiscal Unit of the Division of Children and Family Services in determining and paying child support; and (2) that the parent cooperates with the Kenosha County Child Support Agency in genetic testing/establishment of paternity concerning the minor child.

[9] Jodie's initial appearance was originally scheduled for May 21, 2004. At her May 21 hearing, Jodie filed certificates verifying that she had completed domestic violence education and parenting classes. Jodie also requested to have counsel

539

termination of her parental rights. A jury trial was set for September 20, 2004.

¶ 10. At the September 20, 2004, hearing, Jodie acknowledged that she could not meet the "suitable residence" conditions within 12 months because she would not be able to present any evidence that she might be released within the next 12 months, and therefore entered a no contest plea. Although Jodie's plea was limited to the grounds portion, Jodie signed a form designed for persons contesting neither grounds nor final disposition.[10] Jodie modified the plea form, specifically noting that she disagreed that alternatives to termination of her parental rights were available and explicitly contesting disposition.[11]

---

appointed to represent her. The court continued the initial appearance until June 3, 2004. Because Jodie was not brought to the hearing on June 3, 2004, the court again continued the initial appearance until June 7, 2004.

[10] This case requires us to review the grounds phase in a termination of parental rights proceeding. Termination of parental rights proceedings involve two phases. *Sheboygan County D.H.H.S. v. Julie A.B.,* 2002 WI 95, ¶ 24, 255 Wis. 2d 170, 648 N.W.2d 402. In the first phase, the court determines whether grounds exist to terminate a parent's rights to his or her child. During the grounds phase, "the parent's rights are paramount." *Id.* (citations omitted). Moreover, during the grounds phase, "the burden is on the government, and the parent enjoys a full complement of procedural rights." *Id.*

If the court determines that grounds for termination of parental rights have been proven, thereby finding the parent unfit, the court proceeds to the second phase and determines whether it is in the child's best interest to terminate parental rights. In this dispositional phase of the TPR proceeding, the entire focus of the proceeding shifts to the best interest of the child. *Id.,* ¶ 4.

[11] We note that in *Dane County D.H.S. v. P.P.,* we recently upheld a finding of parental unfitness that was rooted

¶ 11. Without hearing any testimony or evidence supporting the allegations in the petition,[12] the circuit court accepted Jodie's plea and determined that sufficient grounds had been established to find Jodie to be an "unfit" parent based upon her failure to meet the conditions of return established in the CHIPS order.

¶ 12. On October 22, 2004, the court held a dispositional hearing. Although the court had already made a finding of parental unfitness, the court took testimony on the allegations of unfitness at the urging of the Kenosha County District Attorney.

¶ 13. The district attorney established that Jodie had not satisfied the condition of return that required her to obtain suitable housing for Max. Max's caseworker for the Kenosha County Division of Children and Family Services similarly testified that because Jodie's first parole eligibility date was in March 2006, Jodie would not meet the conditions of return within the 12 months following the dispositional hearing. She also testified that Max was adjudged to be in need of protection and services, that termination of parental rights warnings were provided to Jodie, that conditions of return were imposed, and that Jodie failed to meet

in the children's prior adjudication as children in need of protection or services under Wis. Stat. § 48.31 when the parent "chose not to contest any of these predicate steps." *Dane County D.H.S. v. P.P.,* 2005 WI 32, ¶¶ 29, 34, 279 Wis. 2d 169, 694 N.W.2d 344. A significant difference between the present case and *P.P.* is that, here, Jodie asserted that the conditions of return in her original CHIPS order were impossible for her to meet, effectively contesting the circuit court's determination that grounds for parental unfitness had been proven.

[12] In cases where the petition to terminate parental rights is not contested, Wisconsin law requires the circuit court to "hear testimony in support of the allegations in the petition." Wis. Stat. § 48.422(3).

the conditions of return. Max's social worker further testified that Jodie had attempted to meet other conditions of return: Jodie had cooperated with the Division of Children and Family Services, participated in case planning to meet the conditions of return, was on a waiting list for other programming, and had provided regular correspondence to Max and called and visited with him whenever she was able and he was made available to her.

¶ 14. Jodie's trial counsel attempted to raise the issue that it was impossible for Jodie to have met the condition of return that she obtain a suitable residence, and that there was no possibility that Jodie could meet that condition of return within the following 12 months because Jodie was incarcerated. The circuit court judge stated that because the parties had already stipulated to the grounds for parental unfitness, she would not entertain the argument that it was impossible for Jodie to meet the conditions of return imposed as part of the CHIPS order.

¶ 15. At the end of the testimony on the grounds phase, the circuit court again determined that sufficient grounds had been established and found Jodie an "unfit" parent. During the second phase of the termination proceedings, the dispositional phase, the court determined that the Department had met its statutory requirement of assisting Jodie in meeting her conditions of return. The court recognized the impossibility of Jodie meeting the condition of return that required Jodie to supply appropriate housing while Jodie remained incarcerated, but found that this impossibility was the result of Jodie's own actions. In addition, the court found that when the Department began working with Max, he had "a mouth full of cavities" and had "significant anger and extensive temper tantrums upon

the beginning of the transfer" of Max to his foster home. The court noted that Max had greatly improved while in foster care.

¶ 16. Upon completion of the dispositional phase, the circuit court determined that it was in Max's best interest to terminate Jodie's parental rights.[13]

¶ 17. Jodie was appointed counsel to appeal the termination of her parental rights. Jodie's appellate counsel filed a no-merit report, asserting that the plea colloquy satisfied the requirements of Wis. Stat. § 48.422(7), and the plea was therefore knowing and voluntary. The no merit report also asserted that the court appropriately considered Max's best interest in determining that Jodie's parental rights should be terminated. Jodie filed a response to the no-merit report, contending, among other things, that it was impossible for her to complete the conditions for return within 12 months, as required, because she was given a sentence that exceeded 12 months.

¶ 18. In a one-judge unpublished decision, the court of appeals summarily affirmed the circuit court's termination of Jodie's parental rights. Jodie filed a pro se petition for review with this court, and we accepted review. Jodie was appointed counsel for this review.

II

■

¶ 19. This case requires us to examine whether a court may find a parent unfit under Wis. Stat. § 48.415(2)(a) based solely on the parent's failure to

---

[13] The court also entered a default judgment against the parental rights of the named father, as well as any unknown fathers.

543

meet an impossible condition of return. In order to determine whether § 48.415(2)(a) is constitutional as applied to Jodie, we must interpret and apply both the state and federal constitutions and statutory provisions. These present questions of law subject to independent appellate review. *State v. Fisher,* 2006 WI 44, ¶ 4, 290 Wis.2d 121, 714 N.W.2d 495 (*citing State v. Hamdan,* 2003 WI 113, ¶ 19, 264 Wis. 2d 433, 665 N.W.2d 785); *State v. Cole,* 2003 WI 59, ¶ 10, 262 Wis. 2d 167, 663 N.W.2d 700.

¶ 20. The purpose of statutory interpretation is to determine what a statute means so that it may be given its full, proper, and intended effect. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. This court has consistently concluded that "[s]tatutes are presumed to be constitutional; therefore, 'every presumption must be indulged to uphold the law if at all possible.' " *State v. Hezzie,* 219 Wis. 2d 848, 862, 580 N.W.2d 660 (1998) (quoting *Norquist v. Zeuske,* 211 Wis. 2d 241, 250, 564 N.W.2d 748 (1997)). "Where the constitutionality of a statute is at issue, courts attempt to avoid an interpretation that creates constitutional infirmities." *Panzer v. Doyle,* 2004 WI 52, 65, 271 Wis. 2d 295, 680 N.W.2d 666.

¶ 21. As a threshold issue, we examine whether Jodie waived her right to challenge the constitutionality of the statute when she entered a plea of no contest. Whether a party has waived his or her right to assert that a statute violates the party's substantive due process rights is a question of constitutional fact. *Waukesha County v. Steven H.,* 2000 WI 28, ¶ 51 n.18, 233 Wis. 2d 344, 607 N.W.2d 607 (citing *State v.*

*Bangert,* 131 Wis. 2d 246, 283–84, 389 N.W.2d 12 (1986)). Although "[w]e review constitutional questions independently of the conclusion of the lower courts[,]" we uphold a circuit court's findings of evidentiary facts unless the findings are "contrary to the great weight and clear preponderance of the evidence." *Bangert,* 131 Wis. 2d at 283–84 (citations omitted).

¶ 22. Whether Wis. Stat. § 48.415(2), as applied to Jodie, violates her constitutional right to substantive due process, presents a question of constitutional law, subject to independent appellate review. *Monroe County D.H.S. v. Kelli B.,* 2004 WI 48, ¶ 16, 271 Wis. 2d 51, 678 N.W.2d 831.

### III

¶ 23. This case requires us to examine whether the circuit court's finding of parental unfitness violated Jodie's constitutional right to substantive due process because one or more of the court-ordered conditions of return were impossible for Jodie to meet at the time they were imposed.

¶ 24. Because an "as applied" challenge to the constitutionality of a statute is a non-jurisdictional defect, a party's right to challenge the constitutionality of a statute can be waived by entering a plea of no contest. *State v. Cole,* 2003 WI 112, ¶ 46, 264 Wis. 2d 520, 665 N.W.2d 328; *P.P.,* 279 Wis. 2d 169, ¶ 25. However, the constitution requires an affirmative showing that the plea was entered knowingly, voluntarily, and intelligently. *See Bangert,* 131 Wis. 2d at 257

545

(citing *Boykin v. Alabama,* 395 U.S. 238 (1969)).[14] We therefore begin our constitutional analysis by determining whether Jodie's no contest plea was voluntarily, knowingly, and intelligently entered.

A

¶ 25. The mandatory procedures used to properly accept a plea are established by statute. *Bangert,* 131 Wis. 2d at 260–61. In termination of parental rights proceedings, Wisconsin law requires the circuit court to undertake a personal colloquy with the defendant in accordance with Wis. Stat. § 48.422(7). Wis. Stat. § 48.422(3) ("If the petition is not contested the court shall hear testimony in support of the allegations in the petition, including testimony as required in sub. (7)."). Prior to accepting an admission or a plea of no contest, subsection (7) requires the court to:

> (a) address the parties present and determine that the admission is made voluntarily and understandingly;
>
> (b) establish whether any promises or threats were made to elicit an admission;
>
> (c) establish whether a proposed adoptive parent of the child has been identified; and
>
> (d) make such inquiries as satisfactorily establish a factual basis for the admission.

*Steven H.,* 233 Wis. 2d 344, ¶ 39 (citing Wis. Stat.

---

[14] A parent challenging the circuit court's acceptance of a plea is subject to the analysis recognized by this court in *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). *Waukesha County v. Steven H.,* 2000 WI 28, ¶ 42 n.18, 233 Wis. 2d 344, 607 N.W.2d 607.

§ 48.422(7)).[15] In addition, the person entering the no contest plea must have knowledge of the constitutional rights he or she is giving up by making the plea. *Bangert,* 131 Wis. 2d at 265–66.

[15] The statute reads, in full:

Before accepting an admission of the alleged facts in a petition, the court shall:

(a) Address the parties present and determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions.

(b) Establish whether any promises or threats were made to elicit an admission and alert all unrepresented parties to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to them.

(bm) Establish whether a proposed adoptive parent of the child has been identified. If a proposed adoptive parent of the child has been identified and the proposed adoptive parent is not a relative of the child, the court shall order the petitioner to submit a report to the court containing the information specified in s. 48.913(7). The court shall review the report to determine whether any payments or agreement to make payments set forth in the report are coercive to the birth parent of the child or to an alleged to presumed father of the child or are impermissible under s. 48.913(4). Making any payment to or on behalf of the birth parent of the child, an alleged or presumed father of the child or the child conditional in any part upon transfer or surrender of the child or the termination of parental rights or the finalization of the adoption creates a rebuttable presumption of coercion. Upon a finding of coercion, the court shall dismiss the petition or amend the agreement to delete any coercive conditions, if the parties agree to the amendment. Upon a finding that payments which are impermissible under s. 48.913(4) have been made, the court may dismiss the petition and may refer the matter to the district attorney for prosecution under s. 948.24(1). This paragraph does not apply if the petition was filed with a petition for adoptive placement under s. 48.837(2).

(c) Make such inquiries as satisfactorily establish that there is a factual basis for the admission.

Wis. Stat. § 48.422(7).

¶ 26. In any challenge to a no contest plea, the party must make a prima facie showing that the circuit court violated its mandatory duties of informing the party of his or her rights, and the party must allege that the party, in fact, did not know or understand the rights that he or she was waiving. *Steven H.,* 233 Wis. 2d 344, ¶ 42. If the party successfully makes a prima facie showing, the burden shifts to the county to establish by clear and convincing evidence that the parent "knowingly, voluntarily and intelligently waived the right to contest the allegations in the petition." *Id.*

¶ 27. The question regarding the constitutionality of Jodie's no contest plea arrives under a unique procedural posture because Jodie has not filed a motion to withdraw her plea of no contest. Instead, appellate counsel filed a no merit report, which Jodie contested, in which Jodie alleged in response to the report, among other things, that it was impossible for her to complete the conditions for return within 12 months, as required, because she was given a sentence that exceeded 12 months. Jodie clearly asserts that she did not understand what she was giving up by pleading no contest. Jodie further contends that the record reveals that the circuit court failed to meet its duty to determine that Jodie's waiver was entered knowingly because the no contest plea was entered through an internally inconsistent plea questionnaire and colloquy.

¶ 28. This court has previously evaluated whether a parent's no contest plea was knowingly made, even though he had not filed a post-judgment motion to withdraw the plea. *Steven H.,* 233 Wis. 2d 344, ¶ 43. In light of Jodie's response to the no merit report filed in this case, we similarly examine the record to determine

548

whether her no contest plea was entered knowingly, voluntarily, and intelligently. In evaluating the voluntariness of Jodie's plea, we examine all pertinent portions of the record relating to the modified plea questionnaire and colloquy regarding Jodie's modifications to the questionnaire. *See Bangert,* 131 Wis. 2d at 274. We will uphold the circuit court's findings of evidentiary or historical facts unless the findings are "contrary to the great weight and clear preponderance of the evidence." *Bangert,* 131 Wis. 2d at 283–84 (citations omitted).

¶ 29. Although Jodie entered a plea of no contest to the grounds phase, she was given a standardized plea questionnaire designed for persons pleading no contest to both grounds and disposition. Jodie made numerous alterations[16] to, and notations on, the standard plea questionnaire. Jodie altered the first line of the plea form to read: "I, Jodie, mother, hereby enter a no contest plea to the facts as contained in the Termination of Parental Rights petition *as to the grounds phase.*" (italicized portion added by Jodie).

¶ 30. Statement 11 of the plea form reads as follows:

> I am aware that there are other alternatives available to me other than termination of parental rights, specifically:
>
> a. Continued foster care with services provided toward eventual return;

---

[16] We note that Jodie made numerous changes to the form, although the record does not clearly reflect whether she personally made the changes or whether the changes were made through her counsel. In any event, Jodie signed the form as altered by the changes. It is immaterial whether Jodie or her counsel actually made the changes.

b. Placement with relatives;

c. Return of the child with after care services provided (if appropriate);

d. AFDC, food stamps, Title XIX;

e. Paternity/child support order;

f. Parenting classes as well as other services.

¶ 31. Jodie initialed the space provided next to each of the six alternatives listed, but wrote in the margin next to statement 11: "Disagree that these are available due to filing of TPR petition" and wrote next to the listed alternatives (a) through (f): "Disagree with this because TPR petition filed."

¶ 32. Statement 12 of the plea form reads: "Being aware of the alternatives listed in number 11, I still wish to enter this no contest plea and terminate my parental rights." Jodie wrote in the margin next to this statement: "Still disagree that these alternatives are available w/ filing of TPR petition."

¶ 33. Statement 13 of the plea form originally read: "I agree that there are enough facts in the petition for the jury/court to find that there are grounds to terminate my parental rights to the above named child, and I do not object to the judge doing so." Jodie struck the last phrase "object to the judge doing so" and substituted "contest the matter."

¶ 34. In statement 15 of the plea form, Jodie changed the word "will" to "could," and added the phrase "after holding a dispositional hearing" at the end of the statement. Statement 15, as altered by Jodie, reads: "I understand that, if the court accepts the no contest pleas of all parties, my parental rights to the above-named child *could* [deleted "will"] be terminated pursuant to Section 48.__, Stats., and the court can enter a

dispositional order *after holding a dispositional hearing.*" (italicized portions added by Jodie). In addition, Jodie added a notation next to this statement that she was "still contesting disposition."

¶ 35. During the plea hearing, the court recognized that Jodie had "several caveats, apparently, on almost every question that is on the plea form," and that it "better go through them." The court questioned Jodie about some of Jodie's modifications to the plea form:

> THE COURT: You are aware that there are other alternatives that you could ask the Court to consider at the time of the disposition, which is not yet, which is next week—or not next week—but within the next several weeks. Do you understand that?
>
> JODIE: Yes.
>
> THE COURT: And that would be continued foster care, return of the child with aftercare services, AFDC, food stamps, or Title 19, our W-2 it should have in there, paternity, child support order, or parenting classes, as well as other services. Do you understand that?
>
> JODIE: Yes.
>
> THE COURT: Okay, You're saying—Written in the margin on that question is that the—you disagree that these are available to you due to the filing of a TPR petition. Many of them are not available to you because you're in prison, isn't that correct?
>
> JODIE: Yes.
>
> THE COURT: I mean, we understand that there's some things —We can't return the child to you; you're in prison.
>
> JODIE: Yes.

THE COURT: And so some of these things are—even though those options are available and you could ask for them, they're not likely to happen because of your location.

JODIE'S COUNSEL: Your Honor, I wrote in—Because of the way the question's worded that it makes it sound like she's got a choice, and we're—we obviously don't believe she's got a choice. We can argue for them and we can—

THE COURT: Well, this petition really applies to an entire termination of parental rights action, not just the grounds portion.

JODIE'S COUNSEL: And that's why it's difficult—

THE COURT: Right.

JODIE'S COUNSEL: —and things need to be changed. But that's the reason for the notations that are made.

THE COURT: It's appropriate and thorough, Ms. Meyer [Attorney for Jodie] . . . .

¶ 36. In this colloquy, the court failed to address Jodie's modifications to the questionnaire that demonstrated Jodie's belief that termination of her parental rights was not a foregone conclusion due to her no contest plea. During the plea colloquy, the court asked Jodie if she understood that "upon the receipt of finishing this petition or this plea the Court *is going to find you to be an unfit parent?*" (emphasis added). Although Jodie answered in the affirmative during the colloquy, the alterations Jodie made to the standard plea form directly contradict this position. The court failed to address this discrepancy.

¶ 37. Moreover, the circuit court refused to take testimony regarding Jodie's allegation that it was impossible for her to meet the conditions of return im-

posed as part of the CHIPS order. At the October 22, 2004, dispositional hearing, although the court had already made a finding of parental unfitness, the court took testimony regarding the grounds for parental unfitness at the urging of the Kenosha County District Attorney. During this testimony, Jodie's trial counsel attempted to raise the issue that it was impossible for Jodie to have met the condition of return that she obtain a suitable residence, and that there was no possibility that Jodie could meet that condition of return within the following 12 months because Jodie was incarcerated. The circuit court judge stated that because the parties had already stipulated to the grounds for parental unfitness, she would not entertain the argument that it was impossible for Jodie to meet the conditions of return imposed as part of the CHIPS order. Had the circuit court taken testimony, the court would have discovered Jodie's confusion and could have taken steps to ensure that Jodie understood what she was pleading to, or, in the alternative, the court could have rejected Jodie's no contest plea.

¶ 38. Our review of the record reveals that there is insufficient evidence to support a determination that Jodie entered her plea knowingly, voluntarily, and intelligently. The plea form and modifications contained inconsistencies, the circuit court's colloquy was incomplete with regard to these inconsistencies, and the court refused to allow testimony regarding Jodie's reasons for entering a plea of no contest. We conclude that the great weight and clear preponderance of the evidence fails to establish that Jodie's plea of no contest was knowingly, voluntarily, and intelligently entered. We therefore conclude that Jodie has not waived her substantive due

process challenge to Wis. Stat. § 48.415(2) as applied in this case.

B

¶ 39. We next examine whether the circuit court's application of Wis. Stat. § 48.415(2) to Jodie violated her substantive due process rights. Substantive due process rights are rooted in the Fourteenth Amendment of the United States Constitution, and Article I, Sections 1 and 8 of the Wisconsin Constitution.[17] "The right of substantive due process protects against a state act that is arbitrary, wrong or oppressive, regardless of whether the procedures applied to implement the action were fair." *P.P.*, 279 Wis. 2d 169, ¶ 19 (citing *Kelli B.*, 271 Wis. 2d 51, ¶ 19). Substantive due process requires that when a statute adversely affects fundamental liberty interests, the statute must be narrowly tailored to advance a compelling interest that justifies interference with fundamental liberty interests. *Kelli B.*, 271 Wis. 2d 51, ¶ 17 (citation omitted).

¶ 40. This case requires us to examine how a parent's incarceration relates to the decision to terminate parental rights. The United States Supreme Court has recognized a parent's fundamental right to the care and custody of his or her child, and concluded that a state may not terminate this right without an individualized determination that the parent is unfit. *Stanley v.*

---

[17] *Monroe County v. Kelli B.*, 2004 WI 48, ¶ 19 n.7, 271 Wis. 2d 51, 678 N.W.2d 831 ("The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving 'any person of life, liberty, or property, without due process of law[.]' *See also* Wis. Const. art. §§ 1 and 8.").

*Illinois,* 405 U.S. 645, 649 (1972). Absent a finding of unfitness, it is presumed that children are best served by remaining with their natural parents. *Santosky v. Kramer,* 455 U.S. 745, 760 (1982). This court has similarly recognized that "[a] parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.'" *Sheboygan County D.H.H.S. v. Julie A.B.,* 2002 WI 95, ¶ 22, 255 Wis. 2d 170, 648 N.W.2d 402 (citing *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27 (1981) (other citations and quotations omitted)).

¶ 41. Because Jodie has a fundamental liberty interest in parenting Max, any statute that infringes upon this interest is subject to strict scrutiny review. *See Kelli B.,* 271 Wis. 2d 51, ¶ 17. *See also Julie A.B.,* 255 Wis. 2d 170, ¶ 22 (concluding that any attempt by the state to terminate parental rights must involve fundamentally fair procedures) (citations omitted). This court has already determined that the State's compelling interest underlying the 11 grounds for termination of parental rights under Wis. Stat. § 48.415 is to protect children from unfit parents. *P.P.,* 279 Wis. 2d 169, ¶ 20; *Kelli B.,* 271 Wis. 2d 51, ¶ 25. The threshold issue, therefore, is whether Wis. Stat. § 48.415(2), as applied to Jodie, is narrowly tailored to meet the State's compelling interest of protecting Max from an unfit parent.

¶ 42. Wisconsin Stat. § 48.415 establishes 11 grounds for termination of parental rights. Wis. Stat. § 48.415(1)-(10). Under subsection (2)(a) of this statute, grounds for termination of parental rights exist when a

child is in continuing need of protection or services, if the following is established:

> [1] That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders under s. 48.345, 48.347, 48.357, 48.363, 48.365, 938.345, 938.357, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).[18]

> [2] That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.[19]

> [3] That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders not including time spent outside the home as an unborn child; and that the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 12–month period following the fact-finding hearing under s. 48.424.[20]

¶ 43. The legislature defined "reasonable effort" to mean that the responsible agency has made "an earnest and conscientious effort to take good faith steps to provide the services ordered" and to take into consideration "the characteristics of the parent or child . . . the level of cooperation of the parent . . . and other relevant circumstances of the case." § 48.415(2)(a)2.a.[21]

---

[18] Wis. Stat. § 48.415(2)(a)1.

[19] Wis. Stat. § 48.415(2)(a)2.b.

[20] Wis. Stat. § 48.415(2)(a)3.

[21] This subsection states, in full:

¶ 44. In addition, the legislature included a temporal component in termination of parental rights proceedings. *P.P.*, 279 Wis. 2d 169, ¶ 21. The legislature provided that:

> The courts and agencies responsible for child welfare should also recognize that instability and impermanence in family relationships are contrary to the welfare of children and should therefore recognize the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family.

Wis. Stat. § 48.01(1)(a).

¶ 45. The language of Wis. Stat. § 48.415(2) requires a finding by the circuit court that the relevant agency made reasonable efforts. *P.P.*, 279 Wis. 2d 169, ¶ 30. The text obligates the responsible agency to make "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court." Wis. Stat. § 48.415(2)(a)2.a. The statute does not allow the responsible agency to determine which conditions it must, in good faith, assist the parent in meeting.

¶ 46. This subsection of the statute also necessitates that the courts evaluate the particular facts and circumstances relevant to the parent and child involved in the proceeding. Wis. Stat. § 48.415(2)(a)2.a. In light of the legislature's emphasis on "eliminating the need for children to wait unreasonable periods of time for

---

> "reasonable effort" means an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child or of the expectant mother or child, the level of cooperation of the parent or expectant mother and other relevant circumstances of the case.

Wis. Stat. § 48.415(2)(a)2.a.

557

their parents to correct the conditions that prevent their safe return to the family,"[22] the amount of time a parent is unable to provide for his or her child due to the parent's incarceration can and should be considered by the circuit court as part of the court's evaluation of the relevant facts and circumstances.

¶ 47. In this case, we must determine whether the circuit court's application of the statute was constitutionally permissible when the court determined that Jodie was an unfit parent because she failed to meet conditions of return that were impossible for her to meet because she was incarcerated. We find, *J.L.N. v. Nevada,* 55 P.3d 955 (Nev. 2002), a recent decision by the Nevada Supreme Court, to be helpful in our analysis. In *J.L.N.,* the Nevada court evaluated state statutes similar to Wis. Stat. § 48.415(2) in the context of an incarcerated parent. The mother, Diana, was incarcerated for violating conditions of her parole on a forgery conviction, and her children were placed in foster care. *J.L.N.,* 55 P.3d at 957. The Nevada statutes in question establish a rebuttable presumption that the best interests of the child are served by termination of parental rights if the child has been placed outside the home for 14 of any 20 consecutive months. *Id.* at 958 (citing NRS 128.109(2) and NRS 432B.553(2)). Under Nevada law, when a parent is unable or unwilling to correct the circumstances, conduct, or conditions that led to the placement of the child outside the home, there is a failure to adjust. *Id.* at 959 (citing NRS 128.0126). In addition, if a parent fails to comply substantially with the case plan that includes conditions necessary for the return of the child within six months, there is a presumption of failure to adjust. *Id.* Although Diana

---

[22] Wis. Stat. § 48.01(1)(a).

completed every condition of return to every extent possible, given her incarceration, the circuit court found that the best interest of the child prong had been satisfied based on the length of time her child, J.L.N., had been placed outside Diana's home. *Id.* at 957–58.

¶ 48. The Nevada Supreme Court recognized that the majority of other jurisdictions that have considered this issue have determined that while the parent's incarceration is relevant, termination should not be based on the parent's incarceration alone. Other factors must also be considered. *Id.* at 959 (citing *Johnson v. Arkansas Dep't of Human Serv.,* 82 S.W.3d 183 (Ark. Ct.App. 2002); *In re Dependency of J.W.,* 953 P.2d 104 (Wash. Ct.App. 1998); *In the Matter of R.P.,* 498 N.W.2d 364 (S.D. 1993)). The Nevada court similarly concluded that "while a parent's incarceration must be considered in determining whether termination is proper, incarceration alone is insufficient to satisfy the statutory requirement of parental fault as it relates to failure of parental adjustment." *Id.* at 959–60. The circuit court must also consider "the nature of the crime, the sentence imposed, who the crime was committed upon, the parent's conduct toward the child before and during incarceration, and the child's specific needs." *Id.* at 960. Having recognized that Diana and J.L.N. had established a strong, loving bond and that Diana's felony conviction did not involve conduct related to the abuse or neglect of her children, *id.* at 958, the Nevada court concluded that a parent "must be shown to be at fault in some manner and cannot be judged unsuitable by reason of failure to comply with requirements and plans that are impossible to abide by." *Id.* at 959 (citation omitted).

¶ 49. Like the Nevada Supreme Court, we similarly conclude that a parent's incarceration does not, in

itself, demonstrate that the individual is an unfit parent. *See J.L.N.*, 55 P.3d at 956. We further conclude that a parent's failure to fulfill a condition of return due to his or her incarceration, standing alone, is not a constitutional ground for finding a parent unfit. *Id.* These conclusions are required by the Wisconsin and United States Constitutions, which preclude a state from terminating a parent's fundamental right without an individualized determination of unfitness. *Stanley,* 405 U.S. at 649.

¶ 50. Because we interpret statutes to be constitutional if possible, *Hezzie,* 219 Wis. 2d 848 at 862 (citation omitted), we also conclude that Wis. Stat. § 48.415(2) requires the court to evaluate the particular facts and circumstances relevant to the parent and child involved in the proceeding. Our conclusions do not render a parent's incarceration irrelevant. We simply conclude that a parent's incarceration is not itself a sufficient basis to terminate parental rights. Other factors must also be considered, such as the parent's relationship with the child and any other child both prior to and while the parent is incarcerated, the nature of the crime committed by the parent, the length and type of sentence imposed, the parent's level of cooperation with the responsible agency and the Department of Corrections, and the best interests of the child. *See P.P.,* 279 Wis. 2d 169, ¶ 30 (recognizing that the termination of parental rights of the incarcerated parent was "grounded in a lack of fitness on the part of [the parent]. . . . [T]he finding was based on [the parent's] sexual assault and extreme abuse of his own children."). *See also J.L.N.,* 655 P.3d at 960.

¶ 51. We therefore conclude that in cases where a parent is incarcerated and the only ground for parental

termination is that the child continues to be in need of protection or services solely because of the parent's incarceration, Wis. Stat. § 48.415(2) requires that the court-ordered conditions of return are tailored to the particular needs of the parent and child. A contrary interpretation would render the statute unconstitutional. *Compare Hezzie*, 219 Wis. 2d at 862 (citation omitted).

¶ 52. In the present case, the circuit court found Jodie an unfit parent without regard for her actual parenting activities. *Contrast P.P.*, 279 Wis. 2d 169, ¶ 30. There is no evidence that the conditions of return were created or modified for Jodie specifically. Although the circuit court properly considered the fact that Jodie would be incarcerated until at least March 2006, the court did not consider other relevant facts and circumstances particular to Jodie until the dispositional phase, where the parent's rights are no longer paramount and the best interest of the child controls.

¶ 53. Jodie established a substantial relationship with Max during the first two years of his life when she was the sole caregiver for Max. There is no indication that Jodie had problems maintaining a home or exhibited any parental deficiencies prior to her incarceration. The only factual findings by the circuit court regarding Jodie's parental deficiencies pre-incarceration were that Max had "a mouth full of cavities" and that Max had "significant anger and extensive temper tantrums upon the beginning of the transfer" of Max to his foster home. Moreover, Jodie was incarcerated for non-violent offenses and given a sentence of less than four years.

¶ 54. We also note that Jodie made significant progress toward meeting many of the other conditions of return. Jodie took advantage of counseling opportu-

nities while incarcerated.[23] Moreover, Jodie engaged in concerted efforts to maintain contact with Max and clearly demonstrated that she wanted to retain her parental rights over Max.

¶ 55. Substantive due process requires that the State's action to terminate Jodie's parental rights be narrowly tailored to meet the State's compelling interest of protecting Max from an unfit parent. Both the court-ordered conditions of return and the circuit court's evaluation of Jodie's failure to meet these conditions were not narrowly tailored to meet that interest. We conclude that the circuit court improperly deemed Jodie unfit solely by virtue of her status as an incarcerated person without regard for her actual parenting activities or the condition of her child, in violation of Wis. Stat. § 48.415(2), and Jodie's substantive due process rights.

## IV

¶ 56. We conclude that the circuit court's finding of parental unfitness was based on an impossible condition of return, without consideration of any other relevant facts and circumstances particular to the parent, contrary to Wis. Stat. § 48.415(2)(a). We also conclude that Jodie did not waive her right to challenge the constitutionality of Wis. Stat. § 48.415(2) because the record fails to clearly and affirmatively demonstrate that Jodie entered her no contest plea voluntarily,

---

[23] According to certificates filed with the circuit court on May 21, 2004, Jodie completed the parenting classes offered at the Robert E. Ellsworth Correctional Center on November 13, 2003. Jodie also completed domestic violence education offered by the Women's Resource Center of Racine on March 15, 2004.

knowingly, and intelligently. We further determine that 48.415(2), as applied to Jodie, is not narrowly tailored to advance a compelling state interest, and therefore conclude that Jodie's constitutional right to substantive due process was violated. Accordingly, we reverse the court of appeals.

*By the Court.*— The decision of the court of appeals is reversed.

¶ 57. N. PATRICK CROOKS, J., took no part.

¶ 58. JON P. WILCOX, J. (*dissenting*). The termination of parental rights based on Wis. Stat. § 48.415(2) (2003–04)[1] is part of a narrowly tailored step-by-step statutory process. The statutory process ensures an individualized determination of a parent's fitness. A parent's valid plea of no contest does not negate the individualized determination.

¶ 59. In this case, the step-by-step process provided Jodie an individualized determination of her fitness as a parent. The majority concluded otherwise, and now children of incarcerated parents will be serving a concurrent sentence in limbo. Accordingly, I respectfully dissent.

I

¶ 60. Jodie entered a plea of no contest during the grounds step of the termination procedure. The majority deemed this plea invalid. I disagree.

¶ 61. A valid no contest plea must be entered knowingly, voluntarily, and intelligently. *Waukesha County v. Steven H.*, 2000 WI 28, ¶ 42, 233 Wis. 2d 344,

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

607 N.W.2d 607. A plea is knowingly, voluntarily, and intelligently entered when a court determines, based on the totality of the circumstances, that the defendant was aware of his or her constitutional rights. *State v. Bangert,* 131 Wis. 2d 246, 254, 389 N.W.2d 12 (1986).

¶ 62. The record reveals that Jodie knowingly, voluntarily, and intelligently entered her plea. First, she signed a form that she and her attorney tailored to represent her understanding of the plea. Jodie initialed next to line 14 of the form, which stated, "I understand that, if the court accepts the [] no contest plea of all parties, the court will find me to be an unfit parent."[2]

¶ 63. Jodie also initialed next to line 15 of the form, which stated, "I understand that, if the court accepts the [] no contest plea of all parties, my parental rights to the above-named child *could* be terminated pursuant to Section 48.__, Stats., and the court can enter a dispositional order *after holding a dispositional hearing. §§ 48.427 Stats.) Still contesting disposition."* (Emphasis for Jodie's additions to the form.)[3] Jodie tailored the form so it clarified her understanding that her no contest plea related to the grounds phase only, not the dispositional phase.

¶ 64. In addition to Jodie tailoring the form to reflect her understanding of her plea, the court extensively discussed the plea form with her during the subsequent colloquy. The following excerpt illustrates that the court thoroughly examined Jodie's understanding of her plea:

---

[2] Jodie redacted the word "admission" between the phrases "the court accepts the" and "no contest plea."

[3] Again, Jodie redacted the word "admission" between the phrases "the court accepts the" and "no contest plea."

The court: You're giving up your opportunity to present evidence on your own behalf and to make witnesses come to court and testify for you even if they didn't want to come to court?

[Jodie]: Yes.

The court: Do you understand you're giving up your opportunity to make the state prove each element of the statute contained within this petition to establish grounds?

[Jodie]: Yes.

The court: You are giving up your chance to require the state to prove allegations of the petition by evidence that is clear, satisfactory and convincing, and that 10 of the 12 jurors would have to agree on that verdict before it could be accepted?

[Jodie]: Yes.

The court: Do you understand by entering this plea that grounds will be determined to have been met by the state, that they'll have proved by clear, satisfactory and convincing evidence that grounds exist to terminate your parental rights?

[Jodie]: Yes.

The court: And you understand that as a result of that we'll move to phase two of the termination of parental rights?

[Jodie]: Yes.

The court: As a result of that, you understand that if termination of parental rights is granted it could end your relationship between yourself and Max?

[Jodie]: Yes.

565

The court also asked, "Do you understand that upon the receipt of finishing this petition or this plea the Court is going to find you to be an unfit parent? Do you understand that?" Jodie replied, "Yes."

¶ 65. The tailored plea form, coupled with the colloquy, make clear that Jodie possessed the requisite awareness to enter her plea knowingly, voluntarily, and intelligently.

¶ 66. Notwithstanding this evidence in the record, the majority concludes that Jodie did not enter a valid no contest plea. Majority op., ¶ 38. The majority finds the plea defective because of perceived inconsistencies in the form, an inadequate colloquy, and a refusal by the court to take testimony. *Id.* A consideration of these supposed defects in Jodie's plea reveals that they are unpersuasive.

¶ 67. Finding the supposed defects in Jodie's plea requires the majority to launch into second-guessing that is beyond the scope of our *Bangert* analysis. *Bangert* analysis does not ask whether or not the individual has made the best strategic decision at that point of the proceeding. *See Bangert,* 131 Wis. 2d at 254. Yet, the majority's analysis seems to revolve around the feeling that termination of parental rights is a "foregone conclusion" after the grounds stage. Majority op., ¶ 36. An examination of our case law and Wis. Stat. § 48.427 reveals otherwise.

¶ 68. In *Sheboygan County DHHS v. Julie A.B.,* 2002 WI 95, ¶ 24, 255 Wis. 2d 170, 648 N.W.2d 402, this court laid out the nuances of the two-step procedure for contested termination proceedings. The first step determines whether grounds exist to terminate parental rights. Wis. Stat. § 48.424(1). During the first step, the parent's rights are paramount. *Id.* The second step is

the disposition. Wis. Stat. § 48.427. During the second step, the best interests of the child are the polestar. *Julie A.B.*, 255 Wis. 2d 170, ¶ 37.

¶ 69. Based solely on the prevailing factors for the respective steps, parents seemingly have the best chance of prevailing at the grounds stage. In this context, the majority draws the conclusion that Jodie must have not understood her rights. Majority op., ¶ 37. The majority goes so far as to state, "the court failed to address Jodie's modifications to the question-naire that demonstrated Jodie's belief that termination of her parental rights was not a *foregone conclusion* due to her no contest plea." Majority op., ¶ 36 (emphasis added). The majority presumes that termination is a foregone conclusion. The majority views it as a defect that the court did not take testimony and explore the wisdom of Jodie's strategy. *Id.*

¶ 70. This might be persuasive if the legislature had made the policy decision to require termination of parental rights upon the finding of grounds to termi-nate. However, it did not. The legislature created an additional step where the court "*may* enter an order terminating the parental rights of one or both parents." Wis. Stat. 48.427(3) (emphasis added). Although the child's best interest becomes the polestar of the dispo-sition step, termination of parental rights is not a "forgone conclusion."

¶ 71. The majority's discovery of the "defects" opens the door to the creation of a new rule: a parent's otherwise valid plea of no contest at the grounds step will be deemed invalid if he or she challenges the disposition. Although the majority may view this to be the only advisable approach to the two-step termination procedure, it warps this court's longstanding *Bangert* analysis to reach its desired result.

¶ 72. A valid plea of no contest waives an individual's right to challenge the constitutionality of a statute. *Dane County DHS v. P.P.*, 2005 WI 32, ¶ 25, 279 Wis. 2d 169, 694 N.W.2d 344. Therefore, the majority's conclusion that Jodie failed to enter a valid no contest plea also opens the door to its launching into substantive due process analysis.

## II

¶ 73. Jodie did not have her parental rights terminated because of her status as an inmate. She had her parental rights terminated because of the step-by-step statutory process that underlies Wis. Stat. § 48.415(2). Jodie failed to maintain a residence, financially support Max, complete alcohol and drug treatment, demonstrate appropriate parenting skill, or complete counseling. Contrary to the majority's conclusion, Jodie did not have her substantive due process rights violated.

¶ 74. In *P.P.*, this court found that "the statutory step-by-step process that underlies § 48.415(4) is sufficient to show that subsection (4) is narrowly tailored to advance the State's compelling interest of protecting children against unfit parents[.]" *Id.*, ¶ 26. A similar step-by-step statutory process underlies § 48.415(2). *See Julie A.B.*, 255 Wis. 2d 170, ¶ 23. Accordingly, the full statutory scheme should be analyzed in this case.

¶ 75. Jodie's individualized determination of unfitness began when Kenosha County filed a CHIPS petition. Jodie was given notice of the petition. A hearing was held within 30 days. Jodie had the right to a jury trial at the fact-finding hearing. The circuit court found jurisdiction over Max, pursuant to Wis. Stat. § 48.13(8). The matter proceeded to a dispositional

hearing. At the dispositional hearing, the court made findings to maintain and protect the well-being of the child that were the least restrictive to the parent and the child. Jodie never contested any of these proceedings.

¶ 76. After the court entered the CHIPS order, the state filed the TPR petition nearly 17 months after the disposition hearing. On the grounds phase, Jodie pled no contest. If she had not entered a plea of no contest, a fact-finding hearing would have occurred. She would have been entitled to a further individualized determination related to her fitness as a parent. The state would have had the burden of proving that reasonable efforts had been made to provide the services ordered by the court. Wis. Stat. § 48.415(2)(a)2.b. Satisfying the reasonable efforts element would have required the state to prove that the services ordered by the court took into consideration the characteristics of the parent and the child. Wis. Stat. § 48.415(2)(a)2.a. The grounds stage presented Jodie with the opportunity to challenge the conditions imposed for the safe return of Max. However, Jodie pled no contest.

¶ 77. After Jodie pled no contest, the court held a dispositional hearing, at which time the court considered the factors pursuant to Wis. Stat. § 48.426(3). The factors include, but are not limited to, the likelihood the child will be adopted, the child's age and health, the relationship between the parent and the child, the child's wishes, the duration of the child's separation from the parent, and whether a more stable family relationship will result from the termination.

¶ 78. Regardless of the step-by-step statutory process that underlies § 48.415(2), the majority concludes that "the circuit court improperly deemed Jodie unfit *solely by virtue of her status as an incarcerated person*

569

without regard for her actual parenting activities or the condition of her child." Majority op., ¶ 55 (emphasis added). Rather than recognizing that Jodie's no contest plea affected the process for deeming Jodie unfit, the majority uses this set of circumstances to conclude that the conditions imposed on Jodie and the circuit court's evaluation during the grounds stage violated Jodie's substantive due process rights.

¶ 79. However, the state did not act arbitrarily, wrongly, or oppressively. "[T]he court did not consider other relevant facts and circumstances particular to Jodie until the dispositional phase," majority op., ¶ 52, because the court had concluded a valid no contest plea had been entered.

¶ 80. The inconsistency between the majority's conclusion that Jodie had her parental rights terminated "solely by virtue of her status as an incarcerated person" and the reality of this case has a simple explanation: In the face of this court's case law and the statutes, the majority looked to a Nevada Supreme Court case, *J.L.N. v. Nevada,* 55 P.3d 955 (2002).

¶ 81. In *J.L.N.,* the Nevada Supreme Court applied a statute unlike Wisconsin's. An examination of the underlying Nevada statutes related to the termination of parental rights exposes that Nevada's legislature made very different policy judgments than Wisconsin's legislature. In Nevada, "[t]he primary consideration in any proceeding to terminate parental rights must be whether the best interests of the child will be served by the termination." Nev. Rev. Stat. § 128.105 (2004). There is not a two-step termination procedure. There is not a step where the parent's rights are paramount.

¶ 82. Conversely, in Wisconsin, the rights of the parent are paramount during the grounds step of the termination proceeding. *Julie A.B.,* 255 Wis. 2d 170,

¶ 24. Based on *P.P.,* 279 Wis. 2d 169, ¶ 26 and *Julie A.B.,* 255 Wis. 2d 170, ¶ 23, the Wisconsin Legislature crafted a statutory step-by-step process so that it provides an individualized determination of unfitness.

¶ 83. The Wisconsin Legislature also expressly granted courts the necessary exclusive jurisdiction over children alleged to be in need of protection or services as a result of their parent being incarcerated. Wis. Stat. § 48.13(8). Rather than creating a safe harbor for incarcerated parents, as the majority attempts to do in this case, the legislature ensured that a child receiving inadequate care as a result of incarceration was grounds for the statutory step-by-step process to proceed.

¶ 84. Nevertheless, the majority cavalierly finds that the statutory process inadequately provided Jodie an individualized determination. Not only must courts now seemingly advise a parent that pleading no contest at the grounds step is inadvisable, but court-ordered conditions must be more tailored for incarcerated parents. The majority fails to share its vision of how exactly the state is going to be able to come up with such conditions, and also protect the interests of a child.

¶ 85. The majority creates a special class of children who will be left to linger while their parents serve time for their volitional acts. In its effort to protect incarcerated parents, the majority inadvertently imposes on the children of incarcerated parents a sentence in limbo. This contradicts the stated purpose of the Children's Code, which "recognize[s] the importance of eliminating the need for children to wait unreasonable periods of time for their parents to correct the conditions that prevent their safe return to the family." Wis. Stat. § 48.01(a).

¶ 86. The majority also fails to share how its new scheme will work when the incarcerated parent has been sentenced to a longer term than Jodie's. Will a two-year-old whose parent has been sentenced to 14 years need to wait until she is 16 to get a stable family relationship? What happens when a parent will be incarcerated for longer than the remainder of his or her child's adolescence? The majority opinion leaves these questions unanswered.

¶ 87. I cannot support such a distortion of the step-by-step process underlying Wis. Stat. § 48.415(2), especially when it leads to this setback in the care the state provides children neglected by their incarcerated parents. The distortion is all the more perplexing given that Jodie waived her constitutional challenge upon the entry of her valid no contest plea.

¶ 88. For the foregoing reasons, I respectfully dissent.

¶ 89. I am authorized to state that Justice DAVID T. PROSSER joins this opinion.