BRASH, J.[1]
¶ 1 R.D.S. appeals an order of the trial court terminating her parental rights of J.S., as well as an order denying her postdispositional motion to withdraw her no contest plea. In that motion and in this appeal, R.D.S. argues that she should be permitted to withdraw her no contest plea due to her cognitive disabilities for which she had previously been deemed to be incompetent. Thus, she argues that her plea was not knowing, intelligent, and voluntary.
¶ 2 The trial court held an evidentiary hearing on R.D.S.'s postdispositional motion, but ultimately denied her motion to withdraw her plea. We affirm.
BACKGROUND
¶ 3 R.D.S. is the biological mother of J.S., whose date of birth is July 19, 2007. R.D.S. is married to J.S.'s father, B.D.S.[2] They were married in December 1998 and remained married throughout these proceedings. B.D.S. and R.D.S. have three other children; J.S. is the youngest.
¶ 4 The Bureau of Milwaukee Child Welfare (BMCW)[3] has had a long history of involvement with this family. The BMCW began receiving referrals for the family in 1994-the year the oldest child was born. Various allegations have been investigated over the years, including profound neglect, physical abuse of all of the children, and sexual abuse of the oldest child. All of the children have special needs at varying levels, and both parents have mental health issues as well as cognitive delays.
¶ 5 J.S. was first found to be a child in need of protection or services in 2009. The BMCW had received several referrals in 2009 from the older children's school regarding suspected physical abuse, extremely poor hygiene, and behavioral issues. This culminated in an unannounced home visit by the BMCW in May 2009. At that time, it was noted that R.D.S.'s cognitive delays "prohibit[ ] her from providing the children [with] the necessary supervision" and that she generally depends on her husband to communicate for her. Additionally, during that visit B.D.S. became very angry and could not be calmed down. He had to be restrained by police, and was transported to the Milwaukee County Mental Health Complex for evaluation. All of the children were then taken into custody by the BMCW due to the multiple allegations of neglect and physical abuse and the continuing need for involvement by the BMCW.
¶ 6 Child in Need of Protection and Services (CHIPS) petitions were filed with regard to all of the children, with a hearing held and correlating dispositional order filed in October 2009. That CHIPS order set forth several conditions that were required to be met by both B.D.S. and R.D.S. before the children would be returned to them, including psychological evaluations of both parents, proof that they would provide a safe and stable home for the children, cooperation with the children's therapists and demonstrating an understanding of their special needs, and participation in family counseling, anger management, and parenting programs. Additionally, both parents were required to establish and consistently follow a visitation plan with the children.
¶ 7 J.S. was returned to the custody of his parents from February 2011 to January 2014, when he was again removed from the home due to an extreme infestation at the house of roaches, scabies, and bedbugs, and the health concerns relating to J.S. being constantly bitten.[4] J.S. was returned to the home in June 2014, but was removed again in August 2014 because of suspected physical abuse: during an unannounced home visit, J.S. was observed with a mark on his face that resembled the shape of a coat hanger. His parents at first tried to hide the mark, and then refused to explain it; instead, they fled the house with the children, although they later returned and cooperated with authorities.
¶ 8 A petition for the Termination of Parental Rights (TPR) of R.D.S. (as well as B.D.S.) with regard to J.S. was filed in April 2015. In the petition, the State alleged two grounds for termination: (1) continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2) ; and (2) failure to assume parental responsibility, pursuant to § 48.415(6).
¶ 9 R.D.S. was provided with both an attorney and a guardian ad litem for the TPR proceedings.[5] She entered a no contest plea with respect to the grounds of continuing need for protection in April 2016.[6] A dispositional hearing was then held in July 2016, and the trial court found it to be in the best interests of J.S. that the parental rights of both B.D.S. and R.D.S. be terminated.
¶ 10 R.D.S. appealed. She subsequently filed a motion to remand the matter for an evidentiary hearing regarding whether her plea was knowing, intelligent, and voluntary. She argued that because she had previously been deemed incompetent during the CHIPS proceedings as well as during proceedings for a criminal case,[7] her guardian ad litem in the TPR proceedings should not have been permitted to establish a basis for her plea.
¶ 11 The remand court[8] held a hearing on R.D.S.'s motion to determine the sufficiency of the plea colloquy, noting that the trial court had not been aware of R.D.S.'s earlier incompetence rulings. The remand court stated that there is no case law that establishes that a plea cannot be made knowingly, intelligently, and voluntarily if there has been a previous finding of incompetency; thus, that fact is not dispositive, although relevant.
¶ 12 The remand court found the testimony of R.D.S.'s trial counsel and guardian ad litem to be credible with regard to their descriptions of R.D.S.'s level of understanding of the proceedings. The remand court also noted that the incompetency ruling in the CHIPS case occurred in 2009-approximately seven years prior to the entry of the plea. The remand court further recognized that although the finding in the criminal case occurred in 2014, after the finding in the CHIPS case, the criminal court had subsequently found R.D.S. to be competent to proceed with the criminal case in August 2015.
¶ 13 R.D.S. testified at the remand hearing as well. In subsequently discussing R.D.S.'s cognitive delays, the remand court pointed out that R.D.S.'s responses to questions regarding the proceedings were not always consistent; that is, she seemed to at times use a "default option to answering questions" to which she had "previously demonstrated clear and accurate response[s.]" The remand court concluded that this indicated a desire by R.D.S. to avoid the questions and not deal with the issues they posed, as opposed to her being unable to understand them-an opinion which was shared by mental health professionals who had evaluated R.D.S. The remand court thus determined that R.D.S.'s cognitive delays were not so profound as to "make[ ] it impossible" for her to understand the allegations in the TPR and the consequences of her plea, particularly since she had the aid of an attorney and a guardian ad litem .
¶ 14 Based on those findings, the remand court found that the State had met its burden of demonstrating that R.D.S.'s plea was knowing, intelligent, and voluntary. As a result, the remand court declined to vacate her plea. We now review her appeal.
DISCUSSION
¶ 15 On appeal, R.D.S. renews her argument that her plea was not knowingly, intelligently, and voluntarily made due to her cognitive deficiencies, as evidenced by previous findings of incompetence. She therefore contends that she should be allowed to withdraw her plea.
¶ 16 In criminal cases, before accepting a plea the trial court is required to conduct a colloquy with the defendant to ascertain that the defendant understands the elements of the crime to which he or she is pleading guilty, the constitutional rights that are waived by entering the plea, and the maximum potential penalty that can be imposed. See WIS. STAT. § 971.08 ; State v. Bangert , 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986). This colloquy with the defendant helps to ensure that the defendant is knowingly, intelligently, and voluntarily waiving the rights being given up by entering a plea. See State v. Brown , 2006 WI 100, ¶ 23, 293 Wis. 2d 594, 716 N.W.2d 906. This same analysis is used to evaluate pleas entered in TPR cases. See Waukesha Cty. v. Steven H. , 2000 WI 28, ¶ 42, 233 Wis. 2d 344, 607 N.W.2d 607.
¶ 17 Under the Bangert analysis, the parent seeking plea withdrawal "must make a prima facie showing that the [trial] court violated its mandatory duties and [the parent] must allege that in fact he [or she] did not know or understand the information that should have been provided at the [TPR petition] hearing." Steven H. , 233 Wis. 2d 344, ¶ 42. "If [the parent] makes this prima facie showing, the burden shifts to the [State] to demonstrate by clear and convincing evidence that [the parent] knowingly, voluntarily and intelligently waived the right to contest the allegations in the petition." Id.
¶ 18 Here, the remand court determined that R.D.S. had made a prima facie showing that she may not have been competent to understand the TPR proceedings after determining that the plea colloquy was insufficient due to the trial court's lack of knowledge regarding the previous rulings relating to R.D.S.'s competence. Thus, the court held an evidentiary hearing on that issue. "We will uphold the [trial] court's findings of evidentiary or historical facts unless the findings are 'contrary to the great weight and clear preponderance of the evidence.' " Kenosha Cty. Dep't of Human Servs. v. Jodie W. , 2006 WI 93, ¶ 28, 293 Wis. 2d 530, 716 N.W.2d 845 (citation omitted).
¶ 19 At that hearing, the remand court heard and considered testimony relating to R.D.S.'s competence from her trial counsel and her guardian ad litem , as well as testimony from R.D.S. herself. The remand court also discussed information specific to the previous incompetence rulings, including the timing of those rulings relative R.D.S.'s plea in the TPR proceeding and the psychological assessments of R.D.S. prepared in conjunction with those rulings. Ultimately, the remand court found that R.D.S.'s cognitive disabilities did not prevent her from understanding the allegations of the TPR petition and the consequences of her plea. Therefore, it concluded that the State had met its burden of demonstrating that R.D.S.'s plea was knowingly, voluntarily, and intelligently made.
¶ 20 In sum, the remand court thoroughly considered all of the evidence relevant to the issue of R.D.S.'s competence in finding that the State had established that R.D.S.'s plea was knowingly, intelligently, and voluntarily made. See Steven H. , 233 Wis. 2d 344, ¶ 42. In our review of the record, we conclude that this finding is not contrary to the great weight and clear preponderance of the evidence. See Jodie W. , 293 Wis. 2d 530, ¶ 21.
¶ 21 As an alternative argument of sorts, R.D.S. requests that we grant her a new trial in the interests of justice, pursuant to WIS. STAT. § 752.35, because the full controversy was not fully and fairly tried.
¶ 22 "We exercise this power 'only in exceptional cases.' " State v. Sugden , 2010 WI App 166, ¶ 37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). Furthermore, R.D.S. does not discuss the elements involved in exercising that authority, develop her argument, or provide legal authority for the same. Therefore, we decline to consider this argument. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶ 23 Accordingly, we affirm the order of the trial court terminating R.D.S.'s parental rights of J.S., and the order of the remand court denying her postdispositional motion.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The parental rights of B.D.S. were also terminated in these proceedings. An appeal of that termination (Case No. 2017AP1771) was recently affirmed.

The Bureau of Milwaukee Child Welfare (BMCW) has since been renamed The Division of Milwaukee Child Protective Services. Since the agency was still the BMCW at the time these proceedings began, all references will be to the BMCW.

In December 2013, one of the older children had to have a bed bug surgically removed from his ear. Moreover, the infestation was so severe that social service providers had stopped working with the family-both at their home and at agency locations-due to the spread of bugs to the providers themselves.

Prior to the scheduled trial for the TPR proceedings, the parties agreed that a guardian ad litem was necessary for R.D.S. R.D.S. also had a guardian ad litem for the CHIPS proceedings.

There were several procedural delays in these proceedings after the State filed a petition to terminate the parental rights of B.D.S. and R.D.S. with regard to one of J.S.'s siblings, E.S., and then moved the court to join the cases. The State ultimately dismissed the petition regarding E.S. due to his age-he was over seventeen years old at the time.

In the criminal case, R.D.S. was charged with child abuse of J.S.; that case was pending at the time the TPR petition was filed.

The remand motion was heard by the Honorable Laura Gramling Perez, referred to as the "remand court"; the TPR proceedings were before the Honorable David C. Swanson, referred to as the "trial court."