KLOPPENBURG, J.
*219 *671 ¶ 1 In this appeal from a domestic abuse injunction order, Robert Evans argues that an unlawful "email volunteer system" was used to assign a substitute judge. As used here, an "email volunteer system" is a method of assigning a substitute judge to a case by sending an email to the other judges and assigning the first responding available judge to the case. We conclude that Evans fails to show that the use of an email volunteer system violates any statute. We also conclude that, to the extent that Evans is arguing that the use of an email volunteer system violates Wisconsin Supreme Court Rules setting forth administrative duties of the chief judge, we lack authority to review such non-judicial actions. Accordingly, we affirm.
BACKGROUND
¶ 2 On October 13, 2017, a court commissioner granted a petition for a domestic abuse temporary restraining order against Evans and scheduled an injunction hearing to be held before Judge Rhonda Lanford on October 20, 2017.
¶ 3 On the day of the injunction hearing, Evans filed a request for substitution of judge. At the hearing, Judge Lanford granted Evans's request for substitution of judge, stating, "Judge [Ellen] Berz is available to hear this right now." Evans objected, stating his belief that "there would need to be a random selection *672 of the judge." After a brief recess, Judge Lanford explained that she talked with the court administrator and confirmed that when substitutions are requested in domestic abuse injunction hearings, "[a] judge is assigned whoever is available to do it.... An e-mail was sent out randomly, and the first person who responds and is available is assigned. That was Judge Berz, and Judge Berz is waiting in Branch 11 to hear this case." Evans again objected to the method by which Judge Berz was assigned as a substitute judge.
¶ 4 That same day, the parties appeared before Judge Berz. When Evans again objected, Judge Berz explained that "the chief judge's and court administrator's office was contacted and [the original judge] was told that an email should go out to all of the judges to find out who was available at this last-minute request, and whoever answered first," was assigned the case. Judge Berz informed Evans that she answered first. Judge Berz then granted Evans's request for a continuance and scheduled the hearing for four days later, October 24, 2017.
¶ 5 On October 24, 2017, Judge Berz held the injunction hearing and granted the injunction. Evans appeals.
DISCUSSION
¶ 6 The sole issue on appeal is whether the email volunteer system used in this case to assign a substitute judge is unlawful. Evans argues that the email volunteer system "directly contravenes" the statutes and the supreme court rules. As we explain, Evans fails to point to any language in the statutes that supports his argument, *220 and we lack authority over his challenge based on the supreme court rules. *673 Evans's Argument Based on the Statutes
¶ 7 Evans's statutory argument requires that we interpret various statutory provisions. "The purpose of statutory interpretation is to discern the intent of the legislature." Juneau Cty. v. Associated Bank, N.A. , 2013 WI App 29, ¶ 16, 346 Wis.2d 264, 828 N.W.2d 262. When we interpret a statute, we begin with the statute's plain language, because we assume that the legislature's intent is expressed in the words it used, and we give statutory language "its common, ordinary, and accepted meaning." Id. ; State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶¶ 44-45, 271 Wis.2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; ... in relation to the language of surrounding or closely-related statutes." Kalal , 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110.
¶ 8 We begin with WIS. STAT. § 801.58 (2015-16),[1] which itself begins the process by which substitution of judges occurs. WISCONSIN. STAT. § 801.58(1) provides that "[a]ny party to a civil action ... may file a written request ... with the clerk of courts for a substitution of a new judge for the judge assigned to the case." WISCONSIN STAT. § 801.58(2) provides that if a request for substitution of judge "is found to be timely and in proper form, the judge named in the request has no further jurisdiction and the clerk shall request the assignment of another judge under s. 751.03."
¶ 9 In turn, WIS. STAT. § 751.03(3) provides that the "chief judge of any judicial administrative district may assign any circuit judge within the district to *674 serve in any circuit court within the district." Section 751.03(5) provides that "[a]ny assignment referred to in this section or SCR 70.23 may be requested or ordered by telephone to minimize disruption of court calendars and inconvenience to parties and witnesses."
¶ 10 Evans argues that WIS. STAT. §§ 751.03(3) and (5) and 801.58 require personal assignment, by which a chief judge personally assigns a substitute judge in each individual case. He further argues that what he calls "a judge self-assigning" through the email volunteer system contravenes those statutes because it is not such a personal assignment. We disagree.
¶ 11 The plain language of WIS. STAT. § 751.03(3) authorizes a chief judge to "assign any circuit judge within the district to serve in any circuit court within the district." (Emphasis added.) Nothing in this grant of authority says anything about a method, process, or mechanism by which the chief judge may assign a case, let alone the method by which the chief judge must assign a case. Faced with such statutory silence as to the method by which a chief judge is to make substitution assignments, we interpret WIS. STAT. § 751.03(3) to permit chief judges to develop and adopt methods for assigning substitute judges that do not involve personal involvement of the chief judge in each assignment.[2] Evans offers no authority to the contrary.
*675 ¶ 12 Evans erroneously suggests, without citing any authority for the proposition, that the statutory language authorizing assignment by telephone in WIS. STAT. § 751.03(5) means that this is the *221 sole method permitted in cases like this one, which he asserts is "time-sensitive." But, his assertion that the statute, in his words, "specifies a means of assignment in time-sensitive cases" is not supported by any language found in the statute. Rather, the statute's plain wording, that any assignment "may be requested or ordered by telephone," permits but does not require assignment by telephone, regardless of time sensitivity. See State v. McKenzie , 139 Wis.2d 171, 176-77, 407 N.W.2d 274 (Ct. App. 1987) ("In statutory construction ... the word 'may' is generally construed as permissive." (citations omitted) ). Nor does the statute say anything about the method by which the substitute judge is selected for assignment, however requested or ordered.
¶ 13 Somewhat inconsistently, Evans also suggests that under the statutes this case is not time-sensitive and, therefore, the use of the email volunteer system is unlawful because it is unjustified. He bases this argument on WIS. STAT. § 801.58(2m), which provides that the requirement in WIS. STAT. § 813.12, that a domestic abuse injunction hearing shall be held within fourteen days after issuance of a temporary restraining order, does not apply where a request for substitution of judge is granted. According to Evans, there is therefore no urgency to support replacing the chief judge's personal assigning of a substitute judge with the "self-assigning" of the first available judge through the email volunteer system. This argument lacks a starting point because it presupposes that *676 there must be a justification for the method by which substitute judges are assigned, but Evans points to no language in the statutes, or any other authority, so stating.
¶ 14 In sum, we conclude that Evans fails to show that the email volunteer system used in response to his motion for substitution of judge violates any statute.
Evans's Argument Based on the Supreme Court Rules
¶ 15 Evans argues that use of the email volunteer system also violates SCR 70.23. SCR 70.23 provides in pertinent part that:
(4) In cases of substitution, mandatory disqualification or self-disqualification, the judge shall direct the clerk of courts or register in probate of his or her county promptly to notify the chief judge. The chief judge shall assign another judge to preside in the case. The chief judge may direct assignment of judges under this subsection by lot under a tab system.
Evans focuses on the language in this rule stating that "[t]he chief judge shall assign another judge" and "may direct assignment of judges ... by lot under a tab system." SCR 70.23(4). Based on that language, Evans argues that the only permissible methods for substitution of judges are personal assignment by the chief judge in each individual case and assignment "by lot under a tab system." This argument fails because, as we explain, SCR 70.23 describes the administrative duties of chief judges relating to assignment of judges and it is well established that this court is without authority to review administrative actions by the circuit court.
*677 ¶ 16 Relevant here, it is plainly within the chief judge's administrative duties under the supreme court rules to assign "judges within each judicial administrative district" and to maintain "a system for and effective management of case flow through the judicial administrative district." SCR 70.19(3)(a)-(b) ; see also SCR ch. 70, Judicial Council Committee's Note ("The following rules, called the rules of judicial administration, govern court administration...."). In *222 Schoenhofen v. WDOT , 231 Wis.2d 508, 519, 521-23, 605 N.W.2d 249 (Ct. App. 1999), this court highlighted the distinction between a judge's administrative and judicial actions, and explained that only the latter are subject to appellate review. In that case, we ruled that, "[b]ecause an appeal to the court of appeals is defined as a review of a 'judgment or order of a circuit court,' this court does not have the power of appellate review over decisions of a circuit judge acting in a non-judicial capacity ." Id . at 519, 605 N.W.2d 249. (Quoting WIS. STAT. § 808.01(1) ) (emphasis added). Thus, under Schoenhofen , we lack the authority to review Evans's challenge to the chief judge's non-judicial adoption of the email volunteer system and use of that system.
¶ 17 In his reply brief, Evans relies on W.J.C. v. County of Vilas , 124 Wis.2d 238, 240, 369 N.W.2d 162 (Ct. App. 1985), to argue, in Evans's words, that "[w]hether a given procedure conforms to applicable law and court rules is well within this Court's appellate jurisdiction." Evans's reliance on W.J.C. is misplaced because W.J.C. involved a procedural due process challenge to an order for involuntary commitment, 124 Wis.2d at 240, 369 N.W.2d 162, and is wholly irrelevant to our review of a judge's compliance with supreme court rules.
*678 CONCLUSION
¶ 18 For the reasons stated, we conclude that Evans fails to show that an unlawful email volunteer system was used to assign a substitute judge to this case. Therefore, we affirm.
By the Court. -Order affirmed.

All references to the Wisconsin statutes are to the 2015-2016 version unless otherwise noted.

We observe that Evans neither makes an argument, nor points to any evidence indicating, that the email volunteer system was not adopted by the chief judge as a method for assigning substitute judges here.