COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1835**

Cir. Ct. No. 2020TP3

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO
C.A.K., A PERSON UNDER THE AGE OF 18:

COLUMBIA COUNTY DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

K.D.K.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Columbia County: JAMES EVENSON, Reserve Judge. *Affirmed*.

¶1     GRAHAM, J.[1]   K.D.K. appeals an order terminating his parental rights to his son, C.A.K., and an order denying his postdisposition motion for a new trial.  I reject K.D.K.'s arguments and affirm both orders.

## BACKGROUND

¶2     In 2017, when C.A.K. was approximately five months old, he was removed from his mother's home because both of his parents were incarcerated and unable to provide care for him.  There were also concerns about both parents' drug use.  The circuit court, Judge Andrew Voigt presiding, determined that C.A.K. was a child in need of protection or services ("CHIPS"), and the court entered a dispositional order that identified certain conditions that each parent would have to satisfy for C.A.K. to be returned to their homes.

¶3     In February 2020, the Columbia County Department of Health and Human Services (the Department) petitioned for the termination of both parents' rights, and the case was assigned to Judge Voigt.  C.A.K.'s mother has not appealed the order terminating her parental rights, and I discuss her case only to the extent necessary to address the issues K.D.K. raises on appeal.

¶4     The Department's petition alleged three grounds for terminating K.D.K.'s parental rights:  that K.D.K. failed to visit or communicate with C.A.K. during periods in which C.A.K. had been placed outside of K.D.K.'s home, WIS. STAT. § 48.415(1)(a)2. (referred to as "abandonment"); that C.A.K. was in continuing need of protection and services and K.D.K. failed to meet the conditions established for his safe return to K.D.K.'s home, § 48.415(2)(a)3. (referred to as

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

"continuing CHIPS"); and that K.D.K. did not have a substantial parental relationship with C.A.K., § 48.415(6)(a) (referred to as "failure to assume parental responsibility"). K.D.K. denied the allegations, waived the statutory time limits, and requested a jury trial on the grounds phase of the termination of parental rights proceeding. The jury trial was set to begin on January 4, 2022.

¶5 On December 21, 2021, the clerk of the circuit court sent an amended notice of hearing indicating that, due to an unexpected calendar conflict, a reserve judge would preside over the scheduled jury trial, rather than Judge Voigt. C.A.K.'s mother requested a substitution of judge and, on December 29, 2021, the court issued an amended notice indicating that a different judge, Judge James Evenson, would preside over the jury trial. The notice provided: "Upon the receipt of the Substitution Request filed by [C.A.K.'s mother], Judge James Evenson, Reserve Judge, has been assigned to hear the trial on the original[ly] scheduled date/time."

¶6 The next day, and four days before the jury trial was scheduled to commence, C.A.K.'s mother requested an adjournment. She asked that the jury trial be adjourned until such time as Judge Voigt would be available to preside because, among other things, "he [had] been presiding over the matter throughout the pendency of the case … [and] there is a stronger connection to the presiding judge." The Department joined the mother's request. The guardian ad litem objected to an adjournment, arguing, among other things, that C.A.K. had not lived with his parents for more than four years and "[t]o continue to delay these proceedings is to continue to deny [C.A.K.] the permanence he deserves." The circuit court denied the requested adjournment.

¶7 Judge Evenson presided over the three-day jury trial, which commenced as scheduled on January 4, 2022. The social worker who was employed

by the Department and had been assigned to C.A.K.'s case testified at the trial. K.D.K. also testified.

¶8 One of K.D.K.'s primary defenses was that it had been difficult for him to visit and communicate with C.A.K., to satisfy the conditions of return, and to assume parental responsibilities because he had been incarcerated on and off, and he had suffered a series of injuries that required medical attention and several surgeries. K.D.K. asked the court to include an "impossibility to perform" question on the special verdict, which would have asked: "Was it impossible for [K.D.K.] to meet all the conditions established for the safe return of [C.A.K.] to [K.D.K.'s] home?" The court declined to add that question to the special verdict.

¶9 At the conclusion of the trial, the jury found that the Department met its burden on all three grounds to terminate K.D.K.'s parental rights. Specifically, regarding abandonment, the jury found that K.D.K. failed to visit or communicate with C.A.K. for three months or longer during the time that C.A.K. was placed outside the home, and that K.D.K. did not have good cause for failing to visit with C.A.K. during that period. Regarding the continuing CHIPS ground, the jury found that the Department made a reasonable effort to provide court-ordered services to K.D.K., but that K.D.K. failed to meet the conditions established for C.A.K.'s safe return to the home. And finally, on the failure to assume parental responsibility ground, the jury found that K.D.K. failed to assume parental responsibility for C.A.K.

¶10 Judge Evenson also presided over the dispositional hearing, held the following month, at the conclusion of which he granted the Department's petition to terminate K.D.K.'s parental rights.

¶11 K.D.K. appealed the dispositional order. He then filed a motion pursuant to WIS. STAT. RULE 809.107(6)(am), which asked this court to remand to the circuit court so that he could file a postdisposition motion.[2] We granted the motion, retained jurisdiction of the appeal, and remanded for the circuit court to hold a postdisposition proceeding.

¶12 On remand, K.D.K. filed a motion that requested a new trial on several grounds. Judge Evenson presided over the postdisposition hearing on January 9, 2023, and K.D.K, trial counsel, and the Department's social worker testified at the hearing. The circuit court denied the motion for a new trial, and K.D.K. appeals the order denying that motion as well.

¶13 Additional facts about the evidence presented at the jury trial, the evidence presented at the postdisposition hearing, and the circuit court's reasons for denying K.D.K.'s motion for a new trial are summarized as needed in the discussion below.

## DISCUSSION

¶14 On appeal, K.D.K. contends that there is no evidence in the record showing that Judge Evenson was properly assigned to preside over the circuit court proceedings, and K.D.K. argues that the order terminating his parental rights is void on that basis. He also argues that the circuit court erred by denying his request for a special verdict question regarding impossibility. Finally, he contends that trial

---

[2] *See* WIS. STAT. RULE 809.107(6)(am) ("If the appellant intends to appeal on any ground that may require postjudgment fact-finding, the appellant shall file a motion in the court of appeals … raising the issue and requesting that the court of appeals retain jurisdiction over the appeal and remand to the circuit court to hear and decide the issue.").

counsel was ineffective by failing to request a judicial substitution after learning that Judge Evenson would preside over the trial, and failing to obtain and present medical records at trial that would have substantiated the dates of K.D.K.'s surgeries.[3]  I address these arguments in turn.

I.

¶15    K.D.K.'s first and most prominent argument concerns Judge Evenson's authority to preside over the dispositional phase of the proceeding.

¶16    By way of background, K.D.K.'s postdisposition motion questioned whether Judge Evenson had been properly assigned to the proceeding pursuant to WIS. STAT. § 751.03 and SCR 70.23.  K.D.K. pointed out that the record did not contain an application for a judicial assignment form, which would have been signed by a court official, the chief judge, or the district court administrator.  K.D.K. argued:  "The lack of an official form that is usually used to document reassignment of cases in circuit courts rebuts the presumption of regularity."

¶17    At the postdisposition hearing, the circuit court asked K.D.K.'s attorney whether he intended to present any evidence related to the judicial assignment issue, and K.D.K.'s attorney indicated that he did not.  Judge Evenson explained that he had not been assigned to the case pursuant to a case-specific assignment, but had instead been assigned pursuant to a general judicial assignment to cover Judge Voigt's entire calendar for a number of days while he was on an unplanned leave.  Judge Evenson had the assignment order entered into the record. The order was electronically signed by the director of state courts on behalf of the

---

[3] K.D.K. also argued that trial counsel was ineffective for failing to sufficiently communicate with K.D.K. in preparing for trial, and for failing to request an adjournment of the trial date, but he does not renew those arguments on appeal.

chief justice of the Wisconsin Supreme Court, and it was dated January 5, 2022, which was the second day of the dispositional hearing.

¶18      K.D.K. did not take issue with the date of the signed assignment order during the postdisposition hearing, nor did he ask any questions about whether the assignment had been made prior to the date of the assignment order, or how it had been communicated to Judge Evenson.  However, in his post-hearing memorandum to the circuit court, he argued that, because there was no evidence in the record to support Judge Evenson's assignment until the second day of trial, "the presumption of regularity [had] not been established and … the court lacked authority to rule upon the motion for adjournment and preside over the jury trial."  Accordingly, he argued, "[t]he results of the jury trial and subsequent [dispositional order] are void."

¶19      The circuit court rejected this argument.  It determined that the facts, including the December 29, 2021 notice that Judge Evenson would be presiding over the jury trial, establish that "the clerk of court, [Judge Evenson himself], and counsel for all parties were aware of the [assign]ment."  The court explained that the assignment process allows "for immediate assignment when needed … on extremely short notice," with a "paper[] trail" that is documented at a later date.  The court determined that the assignment order "was appropriate, even though it was dated after the commencement of the trial and any pretrial proceedings."

¶20      K.D.K. renews his argument about the propriety of Judge Evenson's assignment on appeal.  He argues that neither the Department nor Judge Evenson had shown that Judge Evenson was properly assigned under WIS. STAT. § 751.03 or SCR 70.23, that the fact that the assignment order was not signed until the second day of trial rebuts the presumption of regularity, and that the proceedings were void. I reject the argument for at least the following four reasons.

¶21     First, K.D.K. has not established any statutory violation. WISCONSIN STAT. § 751.03(1) provides: "The chief justice of the supreme court may designate and assign reserve judges … to serve temporarily in … the circuit court for any county. While acting under a temporary assignment, an active or reserve justice or judge may exercise all the authority of the court to which he or she is assigned." That is what occurred in this case. The statute does not set forth any specific process by which the assignment must be made, nor does it provide that the assignment must be documented in any particular way or by any particular date.

¶22     Second, to the extent that K.D.K. is arguing that there is no evidence that the process used in this case complied with our supreme court's rules of judicial administration, SCR 70.23, that argument is a nonstarter. "[I]t is well established that this court is without authority to review administrative actions by the circuit court" *Petitioner v. Evans*, 2018 WI App 53, ¶15, 383 Wis. 2d 669, 917 N.W.2d 218. So, too, is this court without authority to review administrative actions taken by the director of state courts or the chief justice of our supreme court. *See id.*, ¶16.

¶23     Third, the cases K.D.K. relies on regarding the "presumption of regularity" have nothing to do with the proper method for making and documenting judicial assignments. *See State v. Haugen*, 160 Wis. 494, 497-98, 152 N.W. 176 (1915) (considering whether the "presumption as to substantial compliance" that applies to courts of general jurisdiction also applies when evaluating whether the state tax commission properly exercised its statutory authority); *Howard v. Preston*, 30 Wis. 2d 663, 667-69, 142 N.W.2d 178 (1966) (addressing an error made in the service of a summons and complaint, which is a requirement to obtain personal jurisdiction over a party).

¶24    Finally, K.D.K. cites no authority whatsoever for the proposition that an omission in the documentation of a judicial assignment—and, to be clear, I do not conclude that any omission occurred here—could render the proceedings void.

II.

¶25    K.D.K. also argues that the circuit court erred when it declined to include a question on the special verdict asking the jury whether it had been impossible for K.D.K. to perform the conditions of return set forth in the CHIPS dispositional order.[4]  The Department distinguishes the facts of this case from the facts of the leading case on this topic, **Kenosha Cnty. v. Jodie W.**, 2006 WI 93, 293 Wis. 2d 530, 716 N.W.2d 845, and it contends that the court properly exercised its discretion in declining to include the question.

¶26    Although I generally agree with the Department's analysis, I reject K.D.K.'s argument for a more basic reason.  Erroneous verdict questions are subject to a harmless error analysis; the question is whether it is clear beyond a reasonable doubt that a rational jury would have reached the same result absent the error.  *See* **State v. Beamon**, 2013 WI 47, ¶50, 347 Wis. 2d 559, 830 N.W.2d 681.  K.D.K. is not entitled to a new trial if the failure to add the question to the special verdict was harmless.

¶27    Here, the special verdict question that K.D.K.'s counsel requested specifically pertained to the continuing CHIPS ground for termination of parental

---

[4]  Actually, in his appellate briefing, K.D.K. appears to be asserting that the error was the court's failure to give a *jury instruction* about the impossibility defense.  However, K.D.K.'s counsel never proposed that the court give any such instruction—counsel's request was limited to adding a question about impossibility to the *special verdict*.  To the extent that K.D.K. is arguing on appeal that the court should have given an instruction to the jury about the impossibility defense, that argument is forfeited.  WIS. STAT. § 805.13(3); *see also* **State v. Beamon**, 2013 WI 47, ¶47, 347 Wis. 2d 559, 830 N.W.2d 681.

rights. However, that was just one of the three grounds that the jury found to justify the termination of K.D.K.'s parental rights. K.D.K.'s counsel did not ask for an impossibility instruction or special verdict question regarding the other two grounds—abandonment and failure to assume parental responsibility. And on appeal, he does not attempt to explain why I should conclude that, had the jury been asked to determine whether it was impossible for K.D.K. to perform the conditions of return, that question would have led the jury to reach different verdicts on the abandonment and failure to assume parental responsibility grounds. I therefore conclude that, even if the court erred by declining to ask that question—and, again, I do not conclude that the court erred—any such error would have been harmless.

## III.

¶28    The final issue is whether K.D.K.'s trial counsel was ineffective. K.D.K. argues that he was ineffective for two reasons, but I reject both arguments.

¶29    To demonstrate that trial counsel was ineffective, K.D.K. must establish that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel's performance is constitutionally deficient [only] if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Whether a defendant was denied effective assistance of counsel presents a mixed question of law and fact." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93

10

A.

¶30   K.D.K. first argues that trial counsel was ineffective for failing to request a judicial substitution. The circuit court concluded that counsel's performance was deficient because counsel had been unaware of K.D.K.'s statutory substitution right and did not advise K.D.K. of that right, and I agree with that conclusion. However, I also agree with the court's conclusion that K.D.K. has not shown that he was prejudiced by the omission.

¶31   K.D.K. indicates that he had a strong preference for the trial to be presided over by Judge Voigt. He argues that, had counsel requested a substitution, it is possible that a substitute judge would not have been identified in time to preside over the scheduled trial, and that there would have been no option but to adjourn the trial until a later date, possibly after Judge Voigt had returned from his leave of absence. To the extent that this is an argument about prejudice, I reject it for two reasons.

¶32   First, K.D.K.'s argument is highly speculative. As the circuit court observed, "in all likelihood," another judge other than Judge Voigt would have been assigned to preside over the scheduled trial.

¶33   Second, even assuming that a request for substitution would have ultimately resulted in Judge Voigt presiding over the jury trial, K.D.K. does not make any argument that "there is a reasonable probability that … the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed, K.D.K. tacitly acknowledges that he cannot demonstrate that the results of the proceeding would have been different.

11

¶34 Instead, K.D.K. appears to be arguing that he does not have to make that showing. He argues that K.D.K. was not able to exercise the right of substitution, which is an important "procedural right[] enshrined in the juvenile code," and that the "deprivation of a statutory right" is in itself enough to establish prejudice. To the extent that K.D.K. means to argue that counsel's error was per se prejudicial, he does not cite any authority for that position, which appears to be an incorrect statement of the law. *See, e.g.*, ***State v. Damaske***, 212 Wis. 2d 169, 200-202, 567 N.W.2d 905 (Ct. App. 1997) (rejecting a proposed "per se rule" that would relieve a defendant of the burden to show prejudice in cases in which counsel's deficiency results in the defendant failing to timely request a substitution of the assigned judge).

B.

¶35 I now turn to K.D.K.'s second argument about counsel's ineffectiveness—that counsel failed to subpoena K.D.K.'s medical records, which resulted in them not being available for introduction as evidence during the trial. As mentioned, K.D.K.'s primary defense was that it had been difficult to visit and communicate with C.A.K., to meet the conditions of return, and to assume parental responsibility as a result of K.D.K.'s on-and-off periods of incarceration and three major surgeries that occurred between 2017 and 2019. He argues that the medical records would have bolstered this defense, and that counsel was ineffective for failing to obtain them.

¶36 Trial counsel testified about this issue during the postdisposition hearing as follows. Counsel considered obtaining "medical records relating to three surgeries that [K.D.K.] testified about that occurred … during the course of the CHIPS order." However, after reviewing the file more closely, counsel "found that

the surgeries were referred to in the [social worker's] file," which "corroborated those injuries in the same way that [K.D.K.] had described them." Counsel determined that it would be possible to present evidence about how the surgeries affected K.D.K's "ability to communicate" through the social worker's notes. Then, during the jury trial, counsel introduced facts about K.D.K.'s medical issues and surgeries through the testimony of K.D.K. and the social worker, and the Department did not dispute any of those facts. As K.D.K. acknowledged at the postdisposition hearing, "nobody questioned [him] or denied that [he] had [the] surgeries."

¶37     On appeal, K.D.K. argues that the medical records would have bolstered his defense by providing "specific dates for K.D.K.'s medical problems during the term of the CHIPS order [that] neither he nor [the social worker] were able to provide at trial." However, the circuit court determined that counsel's performance was not deficient and that K.D.K. was not prejudiced, and I agree on both counts.

¶38     As for deficiency, the circuit court determined that "[t]he failure of trial counsel to obtain the records was not ineffective and represented [counsel's] strategic decision in how to get the evidence before the jury." I agree. Counsel decided against seeking out cumulative evidence about K.D.K.'s medical conditions and surgeries, and K.D.K. does not persuade me that this decision falls below an objective standard of reasonableness. *Thiel*, 264 Wis. 2d 571, ¶19. At best, K.D.K. refers to this decision as "less than optimum performance," but counsel's performance need not be "optimum" to be considered constitutionally effective. *See State v. Shata*, 2015 WI 74, ¶56, 364 Wis. 2d 63, 868 N.W.2d 93 ("[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." (citation omitted)).

13

¶39 As for prejudice, K.D.K. argues that his testimony would have been "more effective" if he had access to the medical records because "[a] witness who can provide exact dates is more credible than one who can only guess [about dates]." Whether or not this is the case, I am not persuaded that the result of the trial would have been any different had counsel obtained the medical records. As the circuit court explained, "[n]one of the claims of injury or surgery or medical issues of [K.D.K.] were controverted, and in fact, [the claims] were supported through the testimony of the social worker." At trial, both the social worker and K.D.K. testified about his injuries, and I see no reason to believe that the jury did not credit their undisputed testimony on this topic.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14